IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LOUIS HURST,                          *

    Plaintiff,                   *

vs.                                   *        CASE NO. 4:08-CV-103 (CDL)

SAM'S EAST, INC.,                     *

    Defendant.                   *

                                         *

## O R D E R

Plaintiff claims that his former employer, Sam's East, Inc. ("Sam's" or "Defendant"), discriminated against him because of his race, sex, and age, and that when he complained of discrimination, Sam's retaliated against him.  Plaintiff asserts his claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Defendant seeks summary judgment as to all of Plaintiff's claims. For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 21) is granted.

Preliminarily, the Court notes that Plaintiff, who is represented by counsel, did not file a timely response to Defendant's motion for summary judgment.  It was five days late.  Given the absence of any prejudice to Defendant, the Court rejects Defendant's request to disregard Plaintiff's response based upon its tardiness. However, the Court does find that the affidavit of Sheila Wilson,

relied upon by Plaintiff in opposition to summary judgment, should be disregarded, and as explained below, Defendant's Motion to Strike (Doc. 26) is granted.

MOTION TO STRIKE

Defendant contends, among other things, that Ms. Wilson's affidavit should be stricken from the record because Plaintiff failed to disclose, without substantial justification, Ms. Wilson as a witness before the close of discovery.  For the following reasons, the Court agrees and therefore grants Defendant's motion to strike.[1]

## I.   Procedural Background

On October 2, 2008, the Court issued a Joint Scheduling and Discovery Order, setting a discovery deadline of February 13, 2009, and a dispositive motions deadline of March 30, 2009.  (Joint Scheduling & Disc. Order 4-5, Oct. 2, 2008.)  Plaintiff served his (1) Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures on September 30, 2008 (Ex. 1 to Def.'s Mot. to Strike, Pl.'s Initial Disclosures, Sept. 30, 2008); (2) Amended Initial Disclosures on November 20, 2008 (Ex. 2 to Def.'s Mot. to Strike, Pl.'s Am. Initial Disclosures, Nov. 20, 2008); and (3) Second Amended Initial Disclosures on November 21, 2008 (Ex. 3 to Def.'s Mot. to Strike,

---

[1]Defendant also contends that Ms. Wilson's affidavit should be stricken because it contains hearsay and because most of the assertions made by Ms. Wilson in her affidavit are not based on personal knowledge, are irrelevant, and have no probative value. (Def.'s Mot. to Strike 1-2.) Because the Court decides Defendant's motion to strike based on Plaintiff's failure to disclose Ms. Wilson as a witness before the close of discovery, the Court will not address the merits of these other arguments.

Pl.'s 2d Am. Initial Disclosures, Nov. 21, 2008). In his disclosures, Plaintiff identified fifteen separate people who he claimed were likely to have discoverable information supporting his claims. Sheila Wilson was not identified in any of Plaintiff's disclosures.

On November 20, 2008, Plaintiff served his response to Defendant's interrogatories. (Ex. 4 to Def.'s Mot. to Strike, Resp. to Interrogs., Nov. 20, 2008.) Plaintiff was asked to provide "the name, address, telephone number, place of employment and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings . . . filed in this Action, or any fact underlying the subject matter of this Action." (*Id.* at 1.) Plaintiff identified fifteen people who may have relevant information; Sheila Wilson was not identified. On November 21, 2008, Plaintiff provided an amended response to Defendant's interrogatories. (Ex. 5 to Def.'s Mot. to Strike, Am. Resp. to Interrogs., Nov. 21, 2008.) Sheila Wilson was not identified in the amended response.

On January 19, 2009, Defendant took Plaintiff's deposition. (*See generally* Pl.'s Dep., Jan. 19, 2009.) Plaintiff did not mention Sheila Wilson during the deposition. Discovery closed on February 13, 2009, and Defendant filed its motion for summary judgment on March 30, 2009. On May 11, 2009, Plaintiff filed his response to Defendant's motion for summary judgment. In support of

3

his response, he submitted the affidavit of Sheila Wilson.  This was the first time that Ms. Wilson was identified as a potential witness in this action.

## II.  Pertinent Allegations in Sheila Wilson's Affidavit

Sheila Wilson, a white female, was formerly employed by Defendant as an Audit Team Lead, a management position.  (Wilson Aff. ¶¶ 4, 8, May 11, 2009.)  One of Ms. Wilson's duties "was to become aware of conflicts within the store between personnel and exercise intervention when necessary to keep conflicts from escalating . . . ."  (*Id.* ¶ 5.)  On one such occasion, she witnessed a confrontation between Billy Hatcher, Leneka Stanford, and manager trainee Denise Thomas, all black employees of Sam's.  (*Id.* ¶¶ 6-7.)  During the confrontation, racial slurs and epithets were used.  (*Id.* ¶ 9.)  Ms. Wilson reported the conflict to manager Keith Baker, who told Ms. Wilson that he conducted a "red book investigation into the circumstances."  (*Id.* ¶ 10.)  Nothing was communicated to Ms. Wilson as to what disciplinary matters were taken against Hatcher, Stanford, or Thomas.  (*Id.* ¶ 11.)

On another occasion, Ms. Wilson observed a confrontation between Thomas and Martin Jones.  (*Id.* ¶ 12.)  During this confrontation, "profanity, words that were inappropriate to the workplace, and words that were embarrassing" were used.  (*Id.* ¶ 13.)  Once again, Ms. Wilson brought the incident to Mr. Baker's attention.  (*Id.* ¶ 15.)  Mr. Baker told Ms. Wilson that he had provided the results of his red

4

book investigation to "Sam's Corporate" and that he was not at liberty to discuss what actions were taken. (*Id.* ¶ 17.)  Ms. Wilson claims that "no one was terminated for such misbehavior." (*Id.* ¶ 18.)

Explaining in detail why she has not made herself available to testify in this case prior to May 11, 2009, Ms. Wilson stated,

> That Hurst, heretofore, has not been aware of the extent of the information that I have available through my conversations with Keith Baker and his conversations with me and the evidence that I have at my disposal with regard to my case, and that he and I have discussed it only in general terms and I have not actually been available for contact until Monday, May 11, 2009.

(*Id.* ¶ 27.)  Ms. Wilson also stated that she would not have made herself available as a witness in this action "except that the representatives of Sam's, including Keith Baker, have stated under oath that [Plaintiff] was guilty of gross misconduct and that Lisa Sapp has stated that [Plaintiff's] conduct rose to a much higher level of violence than that personally witnessed by [Ms. Wilson]." (*Id.* ¶ 26.)

## III. Failure to Disclose

Federal Rule of Civil Procedure 26 imposes on a party the duty to disclose to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]"  Fed. R. Civ. P.

26(a)(1)(A)(i).  A party also has a duty to supplement or correct disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  Fed. R. Civ. P. 26(e)(1)(A).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

In this case, it is undisputed that Plaintiff failed to disclose Ms. Wilson as a witness before the close of discovery.  In determining whether his failure to disclose was substantially justified, the Court will consider three factors: (1) the importance of the evidence; (2) the reasons for Plaintiff's failure to disclose the evidence earlier; and (3) the prejudice to Defendant if the evidence is considered.  *See Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (per curiam) (setting forth three factors considered when reviewing district court's decision to exclude previously undisclosed evidence under Rule 37).

In her affidavit, Ms. Wilson states that she witnessed at least two confrontations involving black employees of Sam's that engaged in inappropriate conduct but were not discharged.  (*See* Wilson Aff. ¶¶

6

6-7, 9, 12-14, 18.)   This information is potentially relevant to Plaintiff's claims that he, a white man, was disciplined more harshly than employees outside his protected class, so the Court assumes without deciding that this testimony is important and thus weighs in favor of considering Ms. Wilson's affidavit on Defendant's motion for summary judgment.   Nonetheless, the Court finds that Plaintiff's reasons for failing to disclose the identity of Ms. Wilson before the close of discovery are not substantially justified. Plaintiff contends that he failed to disclose Ms. Wilson as a witness because Ms. Wilson did not make herself available to testify until May 11, 2009, and because Plaintiff had no way of knowing what relevant knowledge Ms. Wilson purportedly possessed until after Ms. Wilson "learned of the contents of Defendant's Brief." (Pl.'s Resp. to Def.'s Mot. to Strike 2.)   The Court finds Plaintiff's justifications for failing to disclose Ms. Wilson as a witness in a timely manner unpersuasive.

Plaintiff does not allege that he did not know of Ms. Wilson's identity prior to the filing of Defendant's motion for summary judgment; rather, Plaintiff merely states that he did not know what information Ms. Wilson possessed.   Although Ms. Wilson stated that she was not "available for contact until Monday, May 11, 2009," Ms. Wilson admits that she discussed the case with Plaintiff "in general terms" previously.   (Wilson Aff. ¶ 27.)   Ms. Wilson's unavailability does not excuse Plaintiff's obligation to identify Ms. Wilson as a witness where Plaintiff knew that Ms. Wilson may have knowledge

regarding his claims.  Plaintiff had a duty to investigate his claims adequately prior to filing his lawsuit and to pursue that investigation zealously during the discovery period.  The Court is unconvinced that, had he done so, he nevertheless would have failed to learn of the information included in Ms. Wilson's belated affidavit.  Plaintiff has provided insufficient justification for his untimely disclosure.

The Court also finds that Defendant would likely suffer unfair prejudice if Ms. Wilson's affidavit is considered.  Due to the failure to disclose her identity, Defendant could not depose Ms. Wilson before the close of discovery.  If the Court permitted her affidavit to be considered at this late date, Defendant would have to go to the expense of deposing her and then incur the additional expense of revising its previously filed motion for summary judgment. In light of the lack of justification for his failure to disclose Ms. Wilson during the discovery period, the Court finds that the imposition of these additional costs on Defendant and associated delays in the resolution of this case would cause Defendant to suffer unfair prejudice.  Accordingly, Ms. Wilson's affidavit is excluded from the record pursuant to Rule 37(c)(1) and the Court will not consider it when deciding Defendant's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

8

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).   When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).   In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.   A movant is not required to come forth with evidence negating the nonmovant's claim.  *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 324.   The nonmoving party must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.   A nonmovant is not required to produce evidence in a form that would be admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact.   *Celotex Corp.*, 477 U.S. at 324.   Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file.  *Id.; accord* Fed. R. Civ. P. 56(e)(1).

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

FACTUAL BACKGROUND

## I.  Plaintiff's Employment

Plaintiff, a white male over the age of forty, began his employment with Sam's Club in Columbus, Georgia on or about October 2, 1989.[2] (Pl.'s Dep. 150:9-13; *see* Pl.'s Aff. ¶ 4, May 11, 2009.) Plaintiff worked for Sam's until the termination of his employment in 2007. (Pl.'s Aff. ¶ 4; Ex. 9 to Pl.'s Dep., Pl.'s Exit Interview, Oct. 22, 2007.) At the time of his termination, Plaintiff was a

---

[2] Plaintiff was born on August 20, 1947. (Pl.'s Dep. 12:3-4.)

10

sales associate in the electronics department.  Plaintiff was not a member of Sam's management and did not have any supervisory duties. (Ex. 4 to Pl.'s Dep., Job Description; *see* Pl.'s Dep. 163:6-164:1.) During all times relevant to this action, the general manager at Sam's was Keith Baker, a white male.  (Pl.'s Dep. 126:21-23; *see* Ex. D to Def.'s Mot. for Summ. J., Baker Decl. ¶ 3, Mar. 29, 2009 [hereinafter Baker Decl. I.].)  Mr. Baker was the highest ranking member of management at the Sam's where Plaintiff worked.  (Pl.'s Dep. 126:24:127:2; *see* Baker Decl. I. ¶ 2.)  At the time of Plaintiff's termination in 2007, Lisa Sapp, a black female, was the assistant manager at the Sam's where Plaintiff worked.  (Ex. C to Def.'s Mot. for Summ. J., Sapp Decl. ¶ 2, Mar. 27, 2009.)

## II.  The "Feature Pod" Incident

On the afternoon of October 19, 2007, a Sam's merchandising manager instructed Plaintiff, who was working as a sales associate in the electronics department, to play the animated movie "Surf's Up" in the promotional television display "feature pod" in the electronics department.  (Pl.'s Dep. 191:15-192:14; *see* Pl.'s Aff. ¶ 5.) Plaintiff followed the merchandising manager's instructions believing that they had been authorized by Sam's corporate office, although Plaintiff had no direct contact with the corporate office that day as

11

to what should be played in the feature pod.[3]  (Pl.'s Dep. 191:23-193:15.)

Subsequently, on that same day, assistant manager Tammy Perez approved a request by two associates, DeShun Powell, a black male, and Karen Larry, a black female, to play a different selection in the feature pod.  (Ex. E to Def.'s Mot. for Summ. J. at WM0310, Perez Statement, Oct. 19, 2007; *id.* at WM0311, Powell Statement, Oct. 19, 2007; *id.* at WM0309, Larry Statement; *see* Sapp Decl. ¶¶ 4-5.)  They selected a live concert performance by the Latin/Spanish rock group Los Lonely Boys, which they began playing in the feature pod.  (Sapp Decl. ¶ 5.)

At some point in the afternoon, Plaintiff, who was unaware that Ms. Perez had authorized the change, observed that the "Surf's Up" DVD was no longer playing in the feature pod.  (Pl.'s Dep. 200:16-201:16; *see* Pl.'s Aff. ¶ 8.)  Soon thereafter, Plaintiff inquired of Ms. Sapp as to why the "Surf's Up" DVD was not playing in the feature pod.  (Ex. 10 to Pl.'s Dep., Pl.'s Statement; *see* Pl.'s Dep. 202:16-23; *see also* Sapp Decl. ¶ 6.)  Ms. Sapp responded that Mr. Powell and Ms. Larry requested that the DVD be changed based on customer requests for "diversity" in the types of DVDs played on the feature pod.  (Pl.'s Dep. 204:3-11; *see* Pl.'s Aff. ¶¶ 11-12; Pl.'s Statement; *see also* Sapp Decl. ¶ 6.)

---

[3]Plaintiff admits that he has put DVDs and CDs into the feature pod that were not on a merchandising list issued by Sam's corporate office. (Pl.'s Dep. 257:3-8.)

Plaintiff, skeptical of Ms. Sapp's explanation, believed that the DVD had been changed at the request of cashiers and checkout supervisors, who preferred something "more lively" to be played in the feature pod. (Pl.'s Dep. 205:10-206:17.) Plaintiff specifically responded to Ms. Sapp by stating: "I [am] tired of diversity being used as an excuse." (*Id.* at 211:7-8.) Ms. Sapp responded to Plaintiff that he "couldn't say that[,]" explaining that Sam's had a diverse customer base and that the money spent by particular groups of customers was just as good as money spent by other groups. (Pl.'s Dep. 211:7-19; *see* Sapp Decl. ¶ 7.) Plaintiff then stated that he was "a veteran and an American citizen and that [he] had the right to say what [he] wanted." (Pl.'s Statement; *see* Pl.'s Dep. 211:7-212:3.) He also opined that "if all the diverse aliens, Spanish, Arabs whatever wanted the same rights that they should become citizens," and that if they "didn't like [Plaintiff's] feelings . . . they could kiss [his] ass." (Pl.'s Statement.) Plaintiff then walked away.

Apparently having second thoughts about his outburst, Plaintiff intended to apologize to Ms. Sapp on two occasions later that day, but he did not want to interrupt Ms. Sapp while she was meeting with other associates. Thus, Plaintiff was never able to find an opportunity to make the apology, and he left Sam's that day without apologizing. (Pl.'s Dep. 216:24-217:3; *see* Pl.'s Aff. ¶¶ 22-23.)

After the incident, Ms. Sapp prepared a written statement regarding the incident. (Sapp Decl. ¶ 10.) She also obtained written statements from Ms. Larry, Mr. Powell, and Ms. Perez. (*Id.*) She reported the incident to Mr. Baker, who was not at work that day. (*Id.* ¶ 11; Baker Decl. I. ¶ 5.) Mr. Baker told Ms. Sapp that he would deal with the matter when he returned to work the next day. (Sapp Decl. ¶ 11; Baker Decl. I. ¶ 5.) Ms. Sapp, using Defendant's Open Door Communications Policy, also contacted John Edwards III, the Regional Human Resources Manager.[4] (Sapp Decl. ¶ 12.) Mr. Edwards referred the matter back to Mr. Baker, and he had no further involvement in the matter. (*Id.;* Baker Decl. I. ¶ 7.) Ms. Sapp presented the written statements she had gathered to Mr. Baker who reviewed them. (Sapp Decl. ¶ 13; Baker Decl. I. ¶ 6.)

### III. Defendant's Termination of Plaintiff's Employment

Plaintiff next appeared for work on Monday, October 22, 2007. He made no attempt to contact Ms. Sapp, Mr. Baker, or Sam's Ethics Hotline regarding the October 19 feature pod incident.[5] (Pl.'s Dep. 217:17-218:11.) When Ms. Sapp arrived for work that same day, Mr. Baker called Plaintiff and Ms. Sapp into his office to discuss the October 19 incident. (*Id.* at 219:8-24; Sapp Decl. ¶ 14; Baker Decl.

---

[4]Sam's Open Door Communications Policy provides that any associate may bring any concern, complaint, or grievance regarding his employment to any member of management. (Ex. 6 to Pl.'s Dep., Open Door Commc'ns Policy.)

[5]Sam's Ethics Hotline was a telephone number associates could use to raise any concerns they may have to the corporate office. (Pl.'s Dep. 156:11-157:4.)

14

I. ¶ 8.)  Mr. Baker explained to Plaintiff the allegations that had been made by Ms. Sapp, and asked Plaintiff if he had made the statements Ms. Sapp described.  (Pl.'s Dep. 219:25-220:8; Baker Decl. I. ¶ 9; Sapp Decl. ¶ 14.)  Plaintiff responded, "Yes, sir, I did that."  (Pl.'s Dep. 220:8; *see* Pl.'s Aff. ¶ 24 ("Keith Baker then asked me if I made the statement that I was tired of diversity being used as an excuse . . . and I said that I did, and he then asked if I said that persons could kiss my ass . . . , and I said that I did." (first alteration in original)).)

Based on Plaintiff's admission that he engaged in inappropriate conduct described by Ms. Sapp and the other associates, Mr. Baker determined that Plaintiff had engaged in gross misconduct and that Plaintiff's employment would be terminated.  (Baker Decl. I. ¶ 10.) Mr. Baker, as the sole decisionmaker regarding Plaintiff's termination (*id.*), informed Plaintiff that his employment was terminated (*id.*; Pl.'s Dep. 232:3-5).  Plaintiff then apologized to Ms. Sapp for his inappropriate statements made on October 19.  (Pl.'s Dep. 226:14-19.)

After informing Plaintiff that he was terminated, Mr. Baker presented Plaintiff with a form titled "Exit Interview."  (*Id.* at 219:15-220:12; Baker Decl. I. ¶ 12; *see* Pl.'s Exit Interview.)  In the "Detailed Statement of Termination" section of the Exit Interview form, Mr. Baker wrote: "[S]tatements made to A.M. Lisa on Friday 10/19/07."  (Baker Decl. I. ¶ 12; *see* Pl.'s Exit Interview.)  Mr.

Baker marked "Gross Misconduct – Other (GMO)" as the reason for Plaintiff's termination.[6]   (Baker Decl. I. ¶ 12; *see* Pl.'s Exit Interview.)   In the "Detailed Statement of Termination" on the Exit Interview form, Plaintiff wrote: "[S]tatements were made that associate regrets [and] has expressed remorse and apologized." (*See* Pl.'s Exit Interview; *see also* Pl.'s Dep. 224:3-7.)

Mr. Baker also completed a section on the Exit Interview form titled "Re-Hire Recommended." (Baker Decl. I. ¶ 13; *see* Pl.'s Exit Interview.)   Under this section, Mr. Baker selected "No" and wrote the following explanation: "[A]ctions and language created a hostile work environment."[7]   (Baker Decl. I. ¶ 13; *see* Pl.'s Exit Interview.) Plaintiff signed the Exit Interview form.   (Pl.'s Dep. 222:5-12; *see* Pl.'s Exit Interview.)   Upon leaving the meeting with Mr. Baker and Ms. Sapp, Plaintiff understood that his employment had been

---

[6]Under Sam's Coaching for Improvement Policy, certain types of "gross" misconduct resulted in immediate termination without the issuance of any preliminary discipline, such as a verbal or written coaching. (Ex. 7 to Pl.'s Dep., Coaching for Improvement Policy.)   The policy provided a list of specific types of gross misconduct, but the list was not exhaustive. (*Id.* at WM0261; *see* Pl.'s Dep. 183:9-18 (acknowledging that list of specific types of gross misconduct were merely illustrative examples).)

[7]By writing that Plaintiff's actions and language created a "hostile work environment," Mr. Baker did not intend to imply that Plaintiff's conduct had violated Sam's Discrimination and Harassment Prevention Policy. (Baker Decl. I. ¶ 13.)   Sam's Discrimination and Harassment Prevention Policy provides, in pertinent part: "We believe in respecting the dignity of every individual.   Respectful, professional conduct furthers our mission, promotes productivity, minimizes disputes, and enhances our reputation.   Thus, we are committed to providing an environment that is free of discrimination or harassment based on an *individual's status*." (Ex. 8 to Pl.'s Dep., Discrimination & Harassment Prevention Policy at WM0252.)

terminated for "Statements made to A.M. Lisa on Friday 10/19/07." (Pl.'s Dep. 224:14-18.)

Plaintiff's position was filled by Rosalva Villescas, who had been recently demoted from her position as a team lead at Sam's. (*See* Ex. 1 to Def.'s Reply in Supp. of Mot. for Summ. J., Baker Decl. ¶ 28, May 29, 2009 [hereinafter Baker Decl. II.].) Plaintiff points to his replacement, who he claims is a younger, less experienced, Hispanic female, in support of his discrimination claims. (*See* Pl.'s Aff. ¶ 40 ("That I have personal knowledge within a very short time after my discharge, I was replaced with a younger Hispanic female in the department who worked there for a couple of months.").)

**IV.  Plaintiff's Charge of Discrimination**

On March 30, 2008, Plaintiff filed a Charge of Discrimination with the EEOC.  (Ex. G to Def.'s Mot. for Summ. J., Charge of Discrimination, Mar. 28, 2008.)  In his charge, Plaintiff alleged that he had been discriminated against by Defendant on the basis of his sex, race, and age, and that he had been retaliated against by Defendant.  (*Id.*)  After the EEOC terminated its investigation and issued a Notice of Right to Sue, Plaintiff filed his present Complaint in this Court.

DISCUSSION

**I.  Discrimination Claims Under Title VII, § 1981, and the ADEA**

Plaintiff contends that he was discriminated against based upon his race, gender, and age. (Compl. ¶¶ 44-47.)  He seeks recovery

pursuant to Title VII (race and gender), § 1981 (race), and the ADEA (age). (*Id.*) Claims of intentional discrimination under Title VII, § 1981, and the ADEA have the same requirements of proof. *See, e.g., Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (per curiam) (noting both Title VII and § 1981 have same requirements of proof); *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001) (per curiam) (noting claim of discrimination under ADEA requires proof of same analytical framework as Title VII claim). Because Plaintiff has pointed the Court to no direct evidence of discriminatory intent, the Court analyzes these claims using the familiar framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

A.   Analytical Framework

Under this framework, Plaintiff must first establish a prima facie case supporting an inference of discriminatory intent by showing that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). If Plaintiff establishes a prima facie case, then the burden shifts to Defendant to articulate a legitimate, non-

18

discriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once Defendant satisfies this burden of production, Plaintiff must produce evidence from which a reasonable jury can conclude that Defendant's proffered reason for its action was a pretext for discrimination. Plaintiff may do this "either directly by persuading the [C]ourt that a discriminatory reason more likely motivated [Defendant] or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The burden to establish pretext merges with Plaintiff's ultimate burden to prove intentional discrimination. *Id.*

    B.   Plaintiff's Prima Facie Case

    Plaintiff contends that he was subject to disparate treatment because of his race, gender, and age. Plaintiff must establish a prima facie case as to all three protected classes. Defendant contends that Plaintiff cannot established a prima facie case of discrimination based upon his race, gender, and age because he has failed to demonstrate that he was either replaced by someone outside of his protected classes or was treated less favorably than a similarly-situated individual outside of his protected classes.[8]

---

[8]For the purposes of this motion, Defendant concedes that Plaintiff belongs to three protected classes (white male over the age of forty), suffered an adverse employment action when he was discharged, and was qualified for the electronics sales associate position at Sam's. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 5 n.4.)

For the purposes of this motion, the Court finds that Plaintiff has pointed to evidence that he was replaced by someone outside of his protected classes.  Evidence exists in the present record from which a reasonable factfinder could conclude that Ms. Villescas, a younger Hispanic female, replaced him.  Thus, for purposes of the pending motion for summary judgment, the Court finds that Plaintiff has established his prima facie case.  Since Plaintiff has established a prima facie case and "create[d] an inference of discrimination," Defendant must rebut this inference by articulating a legitimate nondiscriminatory reason for Plaintiff's termination. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002).

C.   Defendant's Legitimate, Nondiscriminatory Reasons

An employer's burden to rebut an inference of discrimination by presenting legitimate, non-discriminatory reasons for its employment action is "exceedingly light."  *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (internal quotation marks omitted).  Defendant has consistently taken the position that Plaintiff was terminated because of the "statements made to A.M. Lisa on Friday 10/19/07."  (Pl.'s Exit Interview.)  Specifically, Defendant contends that Plaintiff was terminated because of the comments he made to Ms. Sapp that (1) Plaintiff was "tired of diversity being used as an excuse" and that Plaintiff was a "citizen [of] this country and . . . a veteran of this country and that [he] had rights and one of those rights was [he] could pretty much say

what [he] wanted" (Pl.'s Dep. 211:7-212:2), and (2) that "if all the diverse aliens, Spanish, Arabs whatever wanted the same rights that they should become citizens," and that if they "didn't like [Plaintiff's] feelings . . . they could kiss [his] ass" (Pl.'s Statement).

On Plaintiff's Exit Interview form, Mr. Baker noted that Plaintiff's comments to Ms. Sapp constituted "gross misconduct," and that Plaintiff's "[a]ctions and language created a hostile work environment." (Pl.'s Exit Interview.)  Mr. Baker also noted that Plaintiff inappropriately questioned the authority of a member of management through his conduct.  (Baker Decl. I. ¶ 6.)  The Court finds that Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's termination and thus rebutted the presumption of discrimination.

### D.   Plaintiff's Evidence of Pretext

To avoid summary judgment, Plaintiff must produce evidence from which a reasonable factfinder could conclude that Defendant's articulated reasons for its actions are pretextual.  Plaintiff must "meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).  A plaintiff may show pretext by "show[ing] *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).

21

Plaintiff may demonstrate that Defendant's reasons are pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted). The inquiry into pretext requires the Court to determine "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotation marks omitted). If Plaintiff cannot create a genuine issue of material fact as to whether Defendant's articulated reason is pretextual, then Defendant is entitled to summary judgment.

Here, Plaintiff contends that Defendant's proffered reasons for his termination are inconsistent and are therefore unworthy of credence. (*See* Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 15 ("The Plaintiff was terminated for subjective allegations that he created a hostile employment environment that the Defendant belatedly attempted to fashion into an insubordination case.").) The present record refutes Plaintiff's argument. Defendant's reasons for Plaintiff's termination have been consistent and are certainly non-discriminatory. Moreover, no evidence has been produced which casts

22

any doubt upon them. Plaintiff in fact acknowledges that he engaged in the inappropriate conduct that led to his termination.

Plaintiff also contends that he can show pretext with evidence that Defendant treated him differently than other similarly situated employees.[9] (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 11-12.) However, Plaintiff has failed to demonstrate that Defendant treated Plaintiff any differently than a similarly situated employee outside his protected classes such that a reasonable factfinder could conclude that Defendant terminated Plaintiff because of his race, gender, and age. *See, e.g., Holifield,* 115 F.3d at 1562 ("In determining whether employees are similarly situated . . . , it is necessary to consider whether employees are involved in or accused of the same or similar conduct and are disciplined in different ways."); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) ("The plaintiff and the employee [he] identifies as a comparator must be similarly situated in all relevant respects." (internal quotation marks omitted)).

In summary, the Court finds that Plaintiff has failed to produce any evidence from which a reasonable factfinder could conclude that Sam's articulated legitimate, nondiscriminatory reasons were pretext

---

[9]Plaintiff argues that he was treated differently than similarly situated black employees and introduces evidence that three black team leads—Leneka Stanford, Billy Hatcher, and Denise Thomas—engaged in an argument and used profanity, racial slurs, and threats. (Pl.'s Dep. 244:25-252:1.) Plaintiff did not observe the argument and has no personal knowledge of whether Defendant investigated the incident, or what discipline, if any, the three team leads received regarding the incident. (*Id.* at 252:2-254:12.)

for discrimination.  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's discrimination claims brought pursuant to Title VII, § 1981, and the ADEA.

## II.  Retaliation Claims Under Title VII and § 1981

Plaintiff contends that Defendant retaliated against him because of his comments regarding what appeared to him to be race and gender discrimination.  (*See* Compl. ¶ 44.)  Because the elements of a retaliation claim under Title VII are the same as the elements of a retaliation claim under § 1981, the Court will analyze both claims under the same framework.  *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 (11th Cir. 2008) (noting that framework for deciding retaliation claims under Title VII governs retaliation claims under § 1981).

### A.  Analytical Framework

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) (internal quotation marks omitted).  Once the prima facie case is established, the defendant "must proffer a legitimate, non-retaliatory reason for the adverse employment action."  *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  "The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason

24

provided by [the defendant] is a pretext for prohibited, retaliatory conduct." *Id.*

In this case, because Plaintiff never filed a complaint of discrimination or a grievance while employed at Sam's, Plaintiff's retaliation claim must be based upon what he contends is his informal complaint of discrimination.  Protection afforded by the retaliation provision of Title VII "is not limited to individuals who have filed formal complaints, but extends as well to those, like [Plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam). Plaintiff can establish that he engaged in statutorily protected activity under Title VII's opposition clause only if "'he shows that he had a good faith, *reasonable belief* that the employer was engaged in unlawful employment practices.'" *Adams v. Cobb County Sch. Dist.,* 242 F. App'x 616, 621 (11th Cir. 2007) (per curiam) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  Plaintiff must not only show that he subjectively believed he was being discriminated against, but also that his "belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960.

B.   Plaintiff's Prima Facie Case

The Court finds that Plaintiff has failed to establish a prima facie case of retaliation.  Although it is undisputed that Plaintiff

25

suffered an adverse employment action when he was terminated from his employment, the Court finds that Plaintiff did not engage in statutorily protected activity when he told Ms. Sapp on October 19, 2007 that he was "tired of diversity being used as an excuse." (Pl.'s Dep. 211:7-8.)   The Court finds that Plaintiff's comment was in direct response to Plaintiff's belief that a group of associates preferred music DVDs over animated DVDs, which he believed to be the true reason why the "Surf's Up" DVD in the feature pod was changed.   (*Id.* at 210:4-211:15.)   Thus, the Court finds that Plaintiff did not subjectively believe at the time he made the comment that he was opposing an unlawful employment practice. (*See, e.g., id.* at 240:4-7 (noting that no law was violated when employees changed Surf's Up DVD to Los Lonely Boys DVD).)

However, even if Plaintiff subjectively believed he was opposing an unlawful employment practice, the Court finds that this belief was not objectively reasonable.   Plaintiff has failed to point to any authority, and the Court cannot find any, that establishes that the conduct in this case—Sam's associates using "diversity" as an excuse to play certain DVDs that they preferred—was unlawful under either Title VII or § 1981.   Therefore, the Court finds that Plaintiff has not established a prima facie case of retaliation.

Furthermore, even if Plaintiff could establish a prima facie case of retaliation, he still would not prevail.   As explained previously, Sam's has provided legitimate reasons for the termination

of Plaintiff's employment, and Plaintiff has produced insufficient evidence of pretext.  Accordingly, even if Plaintiff could establish a prima facie case of retaliation, Defendant is entitled to summary judgment as to Plaintiff's Title VII and § 1981 retaliation claims.

                                CONCLUSION

    For the reasons previously stated, Defendant's Motion to Strike (Doc. 26) and Defendant's Motion for Summary Judgment (Doc. 21) are granted.


    IT IS SO ORDERED, this 12th day of January, 2010.


                                S/Clay D. Land
                                CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE